**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

————————————

UNITED STATES

        Plaintiff,

    v.                                  Case No. 24-cr-00843-KWR

ROBERT WALSH,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS COUNT 1 OF THE INDICTMENT**

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Count 1 of the Indictment (**Doc. 22**) and Plaintiff's Response in Opposition (**Doc. 25**). Plaintiff requests that the Court dismiss Count 1 of the Indictment for several reasons: that 18 U.S.C. §922(g)(1) is unconstitutional under the Second Amendment, that Mr. Walsh's possession of a firearm did not affect interstate commerce, or that Congress exceeded its commerce clause authority in banning felons from possession firearms. Having reviewed the parties' briefing and relevant law, the Court finds that Defendant's motion is not well-taken, and therefore **DENIES** Defendant's Motion to Dismiss Count 1 of the Indictment.

## BACKGROUND

On June 24, 2024, a grand jury indicted Defendant Robert Walsh on one count of knowingly possessing a firearm and ammunition in and affecting interstate commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924. **Doc. 1**. Defendant had a lengthy criminal record, including three convictions for receiving or transferring stolen motor vehicles, two convictions for possession of burglary tools, resisting, evading, or obstructing an officer, and a previous felon in

possession of a firearm and ammunition conviction.  *Id.*; *see also* **Doc. 10 at 5–9 (**detailing Defendant's arrest history, beginning in 2014).

Pre-trial services noted Defendant's history of substance abuse, including "an extensive history of heroin and methamphetamine abuse," records of which the United States Probation Office maintains.  **Doc. 10 at 3**.  Defendant's arrest record shows probation violations involving Defendant's consumption of morphine and at least two drug-related violations of the terms of his supervised release following his first incarceration for being a felon in possession of a firearm and ammunition. *Id.* **at 5–9.** Pre-trial services also found that Defendant has a violent behavior history, noted in its assessment of the danger he poses to the community.  *Id.* **at 3.**

On November 4, 2024, Defendant filed a Motion to Dismiss Count 1 of the Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional for several reasons.  **Doc. 22.**  The Government filed its Response on November 14, 2024. **Doc. 25**.  With the Defendant having filed no Reply, the issue is now fully briefed and therefore ripe before the Court.

## LEGAL STANDARD

The Second Amendment protects the "right of the people to keep and bear Arms." U.S. Const. amend. II. However, that right is not an unlimited "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) ("The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.").

In evaluating whether a statute violates an individual's Second Amendment rights, the trial court must first determine whether the Second Amendment's plain text covers an individual's

conduct. *New York Rifle & Pistol Ass'n, Inc. vs. Bruen*, 597 U.S. 1, 24 (2022).  If it does, the government must justify its regulation by demonstrating that the infringement on the individual's right to bear arms is consistent with the nation's historical tradition of firearm regulation. *Id*.

A reviewing court must determine if the modern firearm regulation is "relevantly similar" to an already established historical tradition. *Id.* at 28–29. To do so, courts first assess whether the Founders specifically anticipated this type of historical regulation. *Id.* at 28. If the modern regulation deals with a new issue or technological change, courts may utilize a more nuanced approach to determine if historical analogues exist to "circumstances beyond those the Founders specifically anticipated." *Id.* An analogue exists where the historical regulation imposes (i) a comparable burden on the right to self-defense as the contested regulation and (ii) a similar justification for that burden. *Id.* at 29.

Under this standard, a modern firearm regulation may be unconstitutional where (1) a challenged regulation addresses a general societal problem that existed in the eighteenth century, but no historical regulation addressed the problem; (2) earlier generations addressed a societal problem in a materially different way; or (3) an earlier generation tried to enact a similar regulation that courts rejected as unconstitutional. *Bruen*, 597 U.S. at 26–27. This approach recognizes that firearms today pose different regulatory challenges from those that preoccupied legislators when the Second Amendment was ratified in 1791 or when the Fourteenth Amendment extended the right to self-defense to the states in 1868. *Id.* at 34 ("We categorize these historical sources because, when it comes to interpreting the Constitution, not all history is created equal."); *Heller*, 554 U.S. at 634-635 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."). Therefore, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical

*twin*." 597 U.S. at 30 (emphasis in original). The government's historical analogues must also demonstrate established tradition. *Id.* at 46.

## ANALYSIS

Defendant argues that in the wake of *Bruen*, federal laws banning certain people from possession firearms are both facially unconstitutional and as applied to the facts of his case. **Doc. 22**. 18 U.S.C. § 922 (g)(1) makes it unlawful for any person convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess any firearm or ammunition. Defendant also argues that his possession of a firearm does not impact interstate commerce, nor did Congress even have the power under the Commerce Clause to pass § 922 (g)(1) in the first place. **Doc. 22**. For the following reasons, the Court finds that § 922(g)(1) is constitutional, both facially and as-applied, and that Defendant's Commerce Clause-related arguments similarly fail.

### I.    18 U.S.C. § 922(g)(1) is constitutional.

Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional because it unduly inhibits his right to bear arms under the Second Amendment, U.S. Const. amend. II, and exceeds Congress's lawmaking power under the Commerce Clause, U.S Const. art. I, § 8, cl. 3. **Doc. 22.** For the reasons discussed below, the Court finds that § 922(g)(1) is constitutional.

A party may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both. *United States v. Carel*, 669 F.3d 1211, 1217 (10th Cir. 2011). An as-applied challenge acknowledges that a regulation may be generally constitutional but argues that the law is unconstitutional as applied to the specific circumstances of the parties. *Carel*, 668 F.3d at 1217; *N.M Youth Org. v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010). A facial challenge, by contrast, is a "head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Carel*, 668 F.3d at 1217. To

4

bring a successful facial challenge, a challenger must establish no circumstances under which a statute would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Facial challenges are disfavored [because] a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotations and citations omitted). The Court discusses both applications below and finds 18 U.S.C. § 922(g)(1) is constitutional both facially and as applied to Defendant.

### a.  § 922(g)(1) does not facially violate the Second Amendment.

First, 18 U.S.C. § 922(g)(1) does not facially violate the Second Amendment because there is a long-standing history and tradition of preventing felons from accessing firearms.

A facial challenge "is the most difficult challenge to mount successfully, because it requires a defendant to establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (internal quotations omitted). "That means to prevail, the Government need only demonstrate that [§ 922(g)(1)] is constitutional in some of its applications." *Id*.

This Court recently ruled on the facial constitutionality of § 922(g)(1) in *United States v. Rudolfo*, No. 24-cr-551-KWR, which featured nearly identical arguments to the ones Defendant advances here. *See United States v. Rudolfo*, No. 24-CR-551 KWR, 2024 WL 4827554 (D.N.M. Nov. 19, 2024)*. In that case, the Court found that a facial challenge to the constitutionality of § 922(g)(1) failed as a matter of law. Its analysis and findings are applicable here.

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. To determine whether a statute violates the Second Amendment, the Court must determine if "the Second Amendment's plain text covers [the] individual's conduct." *Bruen*, 597 U.S. at 24. If it does, "[t]he government must then justify its

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. This means that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898 (internal citation omitted).

Under the *Bruen* framework, § 922(g)(1) is constitutional. It is true that § 922(g)(1) infringes on Defendant's right to bear arms. While the Constitution does not define "the people," the phrase appears multiple times throughout the Bill of Rights. U.S. Const. amend I ("…the right of the people to peaceably assemble…"); IV ("the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"); IX ("the enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people"). *Heller* defined the scope of the term "the people" broadly as "all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. Thus, any analysis of the constitutionality of modern firearm regulations begins "with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id*. The plain text of the Second Amendment presumptively protects the rights of citizens to possess firearms for self-defense. *See id.*; *Bruen*, 597 U.S. at 24. Indeed, "while *Bruen* clearly establishes that being a law-abiding citizen is sufficient to be included in "the people" to whom the Second Amendment right is endowed, any indication that being a law-abiding citizen is necessary to be included in "the people" is dicta." *United States v. Espinoza-Melgar*, 2023 WL 5279654 *3 (D. Utah. Aug. 16, 2023). Defendant, despite being a felon, retains a right to self-defense under this broad interpretation of the Second Amendment's protections.

However, even if the Second Amendment presumptively protects Defendant's conduct, Defendant's challenge necessarily fails at the second step: the historical inquiry. The Supreme

Court has repeatedly referred to the prohibition against felons possessing firearms as the exemplification of a historically lawful regulation and is presumptively lawful. *Heller*, 554 U.S. at 626, 627 n.6 (explaining that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," and that prohibiting felons from possessing firearms is a "presumptively lawful regulatory measure[]."); *McDonald v. Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 597 U.S. at 80 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating the statement in *Heller* about the propriety of prohibiting felons from possessing firearms); *Rahimi*, 144 S. Ct. at 1902. The *Bruen* court explained that fundamental to the Second Amendment is ensuring that "law-abiding" citizens can possess firearms for self-defense. 597 U.S. at 60. Felons are, by nature, not among "law-abiding" citizens. Also important here is *Bruen*'s reasoning that regulations requiring criminal background checks for gun permits are still valid because these regulations are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *See Bruen*, 597 U.S. at 38 n.9 (citing *Heller*, 554 U.S. at 635). Indeed, several justices joining the Court's decision underscored the limits of the decision regarding felon-possession prohibitions. *Bruen*, 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., *concurring*) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional under Heller and McDonald (quotation marks omitted)); *id*. at 72 (Alito, J., *concurring*) (explaining that *Bruen* did not "disturb[] anything that [the Court] said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns" (citation omitted)). Dispossessing felons is a practice consistent with history and tradition and remains important to the Supreme Court's consideration for the constitutionality of statutes that may infringe on the Second Amendment.

Finally, as the Government points out, in at least 86 cases, district courts have rejected challenged to § 922(g)(1) based on several grounds, including the text, history and tradition, and precedent. Defendant relies completely on two cases as authority, out of the Third Circuit and the District of Mississippi respectively. Neither court binds this one. Nor does either court's analysis persuade this Court to issue an opinion running counter to at least 86 other cases, including its own order, issued a month ago. *See Rudolfo*, No. 24-cr-551-KWR, Doc. 43 (Memorandum Opinion and Order Denying Motion to Dismiss Indictment).

Defendant's facial challenge to the constitutionality of 18 U.S.C. § 922(g)(1) therefore fails as a matter of law.

### b.  § 922(g)(1) is constitutional as applied to Defendant

Defendant also argues that § 922(g)(1) is specifically unconstitutional as applied to him and his conduct. **Doc. 22 at 6**. Defendant argues that his prior felony convictions are non-violent, and thus do not comport with the requirements laid out in *Rahimi*. ***Id.***; *Rahimi*, 144 S. Ct. at 1903 (holding that a person can be disarmed if a court finds that they pose a "credible threat to the physical safety of another."). The Court rejects Defendant's arguments for several reasons.

First and foremost, Defendant poses at least some danger to the public. In *Rahimi*, the Court held that a person can be disarmed if they pose a "credible threat to the physical safety of another." *See* 144 S. Ct. at 1903. It is a tradition that extends back to pre-founding English gun laws authorizing the seizure of arms from those adjudged to be danger to the public, including subjects who "physically threatened others." *See id*. at 1899. At least some felons pose a threat to the physical safety of others in the community, and this country has a longstanding tradition of disarming them as a result, even considering the protections the Second Amendment affords.

It is true that some of Defendant's prior convictions are not, at least facially, violent. Defendant's felony record includes three convictions for receiving or transferring stolen motor vehicles and a previous felon in possession of a firearm and ammunition conviction. **Doc. 10 at 5–9 (detailing Defendant's arrest history)**. Defendant's convictions are not for overtly non-violent felonies, and there is an underlying theme of violence too significant in the trade of stolen vehicles for this Court to ignore.

Additionally, Defendant has a violent behavior history, as noted by pre-trial services, and poses a danger to the community. **Doc 10 at 3.** He also has "an extensive history of heroin and methamphetamine abuse" and a prior conviction for possessing a firearm and ammunition as a felon while on supervised release. ***Id.* at 5–9.** Defendant's history of violent behavior, as documented by pre-trial services, pattern of hard drug abuse further demonstrate a "credible threat to the physical safety" of the public. *Rahimi*, 602 U.S. at 702. "[A] prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id.* at 698.

Moreover, as discussed above, *Rahimi*'s holding does not mean that the government may *only* bar specifically violent felons from keeping and bearing arms. Neither *Heller* nor *Rahimi* require that the underlying felony be violent. Rather, *Rahimi* only said that for the purposes of a prosecution under § 922(g)(8) (not §922(g)(1)), a felon *may* be disarmed if they present a credible threat to the physical safety of another. *Rahimi*, 602 U.S. at 702. Indeed, the Court made a specific point in *Rahimi* to say that it was not disturbing its reasoning in *Heller*: that laws disarming felons, without opining on any standard of violence, are *presumptively lawful*. *Rahimi*, 602 U.S. at 699 (affirming that prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful." (internal quotations omitted)); *Heller*, 554 U.S. at 627 n. 26 (same). Given

that there is a longstanding history of disarming all felons, not just those convicted of violent underlying felonies, Defendant's argument that he has a right to carry a firearm because his underlying felonies are non-violent also fails, even considering *Rahimi*.

Defendant's as-applied challenge to 18 U.S.C. §922(g)(1) therefore also fails as a matter of law. The Court cannot find 18 U.S.C. § 922(g)(1) runs afoul of the Second Amendment.

### c.   Congress did not exceed its Commerce Clause authority with § 922(g)(1).

Defendant also argues that Congress exceeded its authority under the Commerce Clause in passing §922(g)(1). **Doc. 22 at 11**. However, Defendant acknowledges from the outset that this argument lacks any legal support. *Id.*

The Tenth Circuit has expressly foreclosed the argument that 18 U.S.C. § 922(g)(1) exceeds Congress's lawmaking authority under the Commerce Clause. *See United States v. Patton*, 451 F.3d 615, 634–36 (10th Cir. 2006); *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995). Defendant does not point to any authority undermining this holding, and indeed acknowledges that it is "currently foreclosed." **Doc. 22 at 11**. The Court does not see any reason to upset this longstanding rule absent persuasive new authority to suggest otherwise. The Court therefore declines to disturb the Tenth Circuit's understanding of § 922(g)(1)'s constitutionality under the Commerce Clause.

### II.   Defendant's possession of a firearm impacted interstate commerce.

Finally, Defendant argues that his possession of a firearm and ammunition in the instant case cannot satisfy the interstate commerce element of § 922(g)(1). **Doc. 22 at 9.** He argues that "government will be unable to prove § 922(g)(1)'s jurisdictional element as a matter of law. It is his position that 18 U.S.C. § 922(g)(1) applies only when the defendant's own possession of a firearm or ammunition affected commerce at the time the defendant possessed it." *Id.*

Specifically, Defendant makes a grammatical argument: that the adverbial phrase "in or affecting commerce" does not modify "firearm or ammunition," but rather only modifies the verb "possess." ***Id.*** It is the Defendant's position that felon-in-possession statutes require that the prohibited person's *possession* affects interstate commerce, not that the firearm or ammunition affected interstate commerce in its existence. ***Id.*** However, Defendant's attempt to muddy the text of § 922(g)(1) is without merit or success. Indeed, Defendant admits that this position is shaky at best, noting that it would only be persuasive "if the Supreme Court *were to* agree" with this position. ***Id.*** Defendant's position rests on a hypothetical situation that has not yet happened, and which runs counter to the general understanding of the text of the statute.

Moreover, the Tenth Circuit has made clear that a firearm that travels across state lines satisfies the "in or affecting commerce" requirement. *See United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009). "[I]f a firearm has traveled across state lines, the minimal nexus with interstate commerce is met and the statute can be constitutionally applied." *Id.* (citing *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996)). "[N]o further showing of the actual effect of the defendant's actions on interstate commerce [is required]." *Id.* Unless there are facts of which the Court is not aware indicating to the contrary, Defendant possessed a weapon that had been "previously shipped or transported in interstate or foreign commerce." **Doc. 22 at 9**.

## CONCLUSION

Defendant's arguments that 18 U.S.C. § 922(g)(1) is unconstitutional fail for several reasons. Defendant's Motion to Dismiss Count 1 of the Indictment (**doc. 22**) is **DENIED**.

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE